

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE SARA LEE CORPORATION ) Lead Case 03 C 3202
SECURITIES LITIGATION ) Honorable Charles R. Norgle

**OPINION AND ORDER**

Charles R. Norgle, District Judge

Before the court is Sara Lee Defendants' Motion for Judgment on the Pleadings. For the following reasons, the Motion is granted.

**I. BACKGROUND**

**A. Facts**

Defendant Sara Lee is a Maryland Corporation with its principal place of business in Chicago, Illinois. Sara Lee currently has three global lines of business through which it markets and manufactures products: Food and Beverage, Intimates and Underwear, and Household Products. Defendant C. Steven McMillan ("McMillan") was Chairman of the Board of Directors, President, and Chief Executive Officer of Sara Lee during the relevant time period. Defendant Lambertus M. de Kool ("de Kool") was Executive Vice President and Chief Financial Officer of Sara Lee during the relevant time period. Lead Plaintiffs Boca Raton General Employees Retirement Fund and Central Laborer's Pension Fund purchased the common stock of Sara Lee at allegedly inflated prices between August 1, 2002 and April 24, 2003.

In their Consolidated Amended Complaint, Plaintiffs allege that Defendants engaged in a fraudulent scheme to mislead the investing public as to Sara Lee's overall business and financial condition, causing Plaintiffs to purchase Sara Lee's stock. Specifically, Plaintiffs allege that

1

Defendants fraudulently failed to disclose the following seven factors regarding Sara Lee's business: (1) that Sara Lee allegedly acquired the Earthgrains Company without adequate due diligence, (2) that a corporate reorganization plan called the "Reshaping Program" was allegedly plagued with problems, (3) that Sara Lee allegedly engaged in improper "channel stuffing," or overloading retailers with goods just prior to the end of reporting periods, (4) that Sara Lee allegedly deferred self-insurance expenses, (5) that Sara Lee allegedly incurred contingent liability related to an Environmental Protection Agency ("EPA") investigation, (6) that Sara Lee allegedly granted credit to high risk customers, and (7) that Sara Lee allegedly maintained inadequate financial reporting systems and internal controls. This fraudulent and deceptive course of conduct, Plaintiffs allege, covered up various missteps by Sara Lee's executives, and allowed Defendants to repeatedly and knowingly disseminate false earning forecasts to securities analysts and the investing public. As a result of these allegedly deceptive practices, the price of Sara Lee's common stock rose as high as $23.84 per share on November 26, 2002.

Plaintiffs allege that five months after the stock peaked at $23.84, Sara Lee could eventually no longer hide its business problems from the public, and issued a press release over the Business Wire on April 24, 2003 announcing that earnings per share would be in the range of $1.50 to $1.52, rather than the projected estimate of $1.59 per share. By April 28, 2003, Plaintiffs allege, the market had absorbed the impact of this damaging information, and the price of Sara Lee's common stock fell to as low as $16.25 per share. Plaintiffs allege that this drop represented a loss of nearly $6 billion of market capitalization and shareholder value.

2

## B. Procedural History

Lead Plaintiffs filed their Consolidated Amended Class Action Complaint for Violations of Federal Securities Laws (the "Complaint") on January 20, 2004. In Count I of the Complaint, Plaintiffs allege that Defendants carried out a scheme to deceive the investing public by artificially inflating the market price of Sara Lee's securities, thereby causing Plaintiffs to purchase Sara Lee's securities at those artificially inflated prices, in violation of Section 10(b) of the Securities and Exchange Act (the "Act"), 15 U.S.C. § 78j(b), and Securities Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5. In Count II, Plaintiffs allege that the individual Defendants acted as controlling persons of Sara Lee within the meaning of Section 20(a) of the Act, 15 U.S.C. § 78t(a), and are therefore individually liable to Plaintiffs.

Defendants filed a Motion to dismiss on March 5, 2004. The court denied this Motion on December 21, 2004. On January 10, 2005, Defendants moved the court to certify an interlocutory appeal of its denial of the Motion to Dismiss. The court denied this Motion on May 20, 2005.

The Supreme Court of the United States issued its Opinion in Dura Pharms., Inc. v. Broudo, 544 U.S. 336 (2005), on April 19, 2005. In that Opinion, the Supreme Court held that plaintiffs in private securities fraud actions must adequately plead and prove that any misrepresentation or fraudulent conduct by defendants "proximately caused plaintiff's economic loss." Id. at 346. In a status hearing on July 29, 2005, the court brought Dura to the attention of the parties. On October 19, 2005, Defendants filed their Motion for Judgment on the Pleadings. In this Motion, Defendants cite Dura extensively, and assert that Plaintiffs have failed to adequately plead a causal relation between Defendant's alleged misrepresentations or fraudulent

behavior and Plaintiff's economic loss. Plaintiffs filed their Response to this Motion on November 11, 2005. Defendants filed their Reply on November 22, 2005. The Motion is fully briefed and before the court.

## II. DISCUSSION

### A. Standard of Decision

The court reviews a motion for a judgment on the pleadings "using the standard applicable to dismissals under [FRCP] 12(b)(6) for failure to state a claim on which relief can be granted." Guise v. BMW Mortg., LLC, 377 F.3d 795, 798 (7th Cir. 2004). "Rule 12(c) permits a party to move for judgment after the parties have filed the complaint and answer." N. Ind. Gun & Outdoors Shows, Inc. v. City of South Bend, 163 F.3d 449, 452 (7th Cir. 1998). In considering a 12(c) motion, the court "accept[s] the facts alleged in the complaint in the light most favorable to the . . . non-moving party." Guise, 377 F.3d at 798. The court will grant Defendants' Motion only if "it appears beyond a doubt that [Plaintiffs] cannot prove any facts to support a claim for relief and [Defendants] demonstrate that there are no material issues of fact to be resolved." Brunt v. SEIU, 284 F.3d 715, 718-19 (7th Cir. 2002).

### B. Defendants' Motion for Judgment on the Pleadings

#### 1. *The pleading requirements and elements of a securities fraud complaint*

Private lawsuits for securities fraud "are based upon federal securities statutes and their implementing regulations." Dura, 544 U.S. at 341. Section 10(b) of the Act prohibits (1) the "use or employ[ment] . . . of any deceptive device," (2) "in connection with the purchase or sale of any security," and (3) "in contravention of" SEC "rules and regulations." Id. (quoting 15 U.S.C. § 78j(b)). SEC rule 10(b) prohibits the making of any "untrue statement of material fact"

4

or the omission of any material fact "necessary in order to make the statements made . . . not misleading." Id. (quoting 17 C.F.R. § 240.10b-5). Under the Private Securities Litigation Reform Act ("PSLRA"),

> a securities fraud complaint must (1) 'specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed' and (2) 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.' 15 U.S.C. § 78u-4(b)(1), (2). In other words, plaintiffs must not only plead a violation with particularity; they must also marshal sufficient facts to convince a court at the outset that the defendants likely intended 'to deceive, manipulate, or defraud.'

Makor Issues & Rights, Ltd. V. Tellabs, Inc., 437 F.3d 588, 594 (7th Cir. 2006) (quoting Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 (1976)). For the purposes of this motion, however, the most important pleading requirement imposed by the PSLRA is that plaintiffs in securities fraud cases must allege "the traditional elements of causation and loss." Dura, 544 U.S. at 345-46 (citing 15 U.S.C. § 78u-4(b)(4)).

The elements of a Section 10(b) claim are as follows: "(1) 'a material misrepresentation or omission,' (2) 'scienter, i.e., a wrongful state of mind,' (3) 'a connection with the purchase or sale of a security,' (4) 'reliance, often referred to in cases involving public securities markets (fraud-on-the-market cases) as transaction causation,' (5) 'economic loss,' and (6) 'loss causation.'" DH2, Inc. v. Athanassiades, 404 F. Supp. 2d 1083, 1095-96 (N.D. Ill. 2005) (quoting Dura, 544 U.S. at 341-42); see also Makor Issues, 437 F.3d at 595. The court now turns its attention to the key issue, for this motion, of loss causation.

5

## 2. *Dura and its progeny*

As the court has noted above, a plaintiff asserting a claim of securities fraud must allege and prove that "defendant's fraud caused an economic loss." Dura, 544 U.S. at 338. In Dura, the Supreme Court overturned a Ninth Circuit decision holding that "a plaintiff can satisfy this requirement - a requirement that courts call 'loss causation' - simply by alleging in the complaint and subsequently establishing that 'the price' of the security *'on the date of purchase* was inflated because of the misrepresentation.'" Id. (quoting Broudo v. Dura Pharms., 339 F.3d 933, 938 (9th Cir. 2003)).

Plaintiffs in Dura were individuals who purchased stock in Dura Pharmaceuticals, Inc. These individuals brought a securities fraud class action suit against Dura, alleging that Dura had made false statements regarding the profitability of its drug sales, and future Food and Drug Administration ("FDA") approval of a new asthmatic spray device. Id. at 339. After Dura announced that its earnings would be less than expected, and that the FDA would not approve the spray device, Dura's stock lost significant value. Id. The District Court dismissed the complaint, holding that the drug profitability claim "failed to adequately allege an appropriate state of mind . . . ," and that "[i]n respect to the plaintiffs' spray device claim . . . the complaint failed adequately to allege 'loss causation.'" Id. at 340. The complaint included only the following allegation regarding the economic losses caused by Dura's misstatement about the spray device: "[i]n reliance on the integrity of the market, [the plaintiffs] . . . paid artificially inflated prices for Dura securities," and the plaintiffs thereby suffered damages. Id. The Ninth Circuit reversed, holding that "plaintiffs establish loss causation if they have shown that the price *on the date of purchase* was inflated because of the misrepresentation." Broudo, 339 F.3d at 938. The

6

Supreme Court granted certiorari because the Ninth Circuit's views on loss causation differed from those of other Circuits. Dura, 544 U.S. at 340.

In considering this issue, the Supreme court reasoned that "in cases such as this one (i.e. fraud-on-the-market cases) an inflated purchase price will not itself constitute or proximately cause the relevant economic loss." Id. at 342. Justice Breyer, writing for a unanimous court, first indicated that at the time of such a transaction, the purchaser has not suffered a loss, as "the inflated purchase payment is offset by ownership of a share that *at that instant* possesses equivalent value." Id. More importantly, however, even if the purchaser does suffer a future loss when the stock price decreases, this loss may or may not be ultimately caused by an earlier misrepresentation.

> When the purchaser subsequently resells such shares, even at a lower price, that lower price may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price . . . Given the tangle of factors affecting price, the most logic alone permits us to say is that the higher purchase price will *sometimes* play a role in bringing about a future loss.

Id. at 342-43. An inflated purchase price may therefore "touch upon," or "sometimes play a role in bringing about a future loss," but this "is not to *cause* a loss, and it is the latter the law requires." Id. at 343 (citing 15 U.S.C. § 78u-4(b)(4)).

Under the PSLRA, Justice Breyer indicated, plaintiffs in securities fraud actions have "'the burden of proving'" that any alleged misrepresentations made by defendants "'caused the loss for which the plaintiff seeks to recover.'" Id. at 345-46 (quoting 15 U.S.C. § 78u-4(b)(4)). Congress thus clearly intended "to permit private securities fraud actions for recovery where, but only where, plaintiffs adequately allege and prove the traditional elements of causation and loss."

Id. at 346. The Supreme Court therefore held that a plaintiff in a private securities fraud action must allege and prove "that the defendant's misrepresentation (or other fraudulent conduct) proximately caused the plaintiff's economic loss." Id. In the case before it, the Supreme Court ruled that the plaintiffs had failed to properly plead loss causation, as plaintiffs had only pled that the stock price was artificially inflated, and had not pled any specific causal connection between the artificial price inflation and that economic loss. Id. at 347. The Supreme Court therefore reversed and remanded. Id. at 348.

The Dura case has been followed numerous times by various district courts throughout the United States. The court will briefly analyze a small sampling of these cases. In DH2, Inc., the court determined that the plaintiff had properly pled loss causation where it had sufficiently alleged a claim of market manipulation "based on Defendant's alleged use of DH2's stolen trade secrets." 404 F. Supp. 2d at 1097. A Southern District of California court, in In re Immune Response Sec. Litigation, held that where plaintiffs alleged that defendants' wrongful actions caused stock prices to become artificially inflated, and that the stock price dropped sharply when defendants' actions became public, plaintiffs had alleged enough of a causal connection to survive a motion to dismiss. 375 F. Supp. 2d 983, 1025 (S.D. Cal. 2005). In In re Odyssey Healthcare, Inc. Sec. Litigation, the court found that the following allegations were sufficient to plead loss causation: (1) Odyssey's 2004 earnings per share would be substantially less than initially predicted, (2) the President and CEO of Odyssey resigned due to "operational challenges," and (3) the Department of Justice had begun an investigation into Odyssey under the False Claims Act, and (4) Odyssey's stock price "collapsed." 424 F. Supp. 2d 880, 885 (N.D. Tex. 2005) (dismissing on other grounds). A Northern District of California court, in Plumbers

& Pipefitters Local 572 Pension Fund v. Cisco Systems, Inc., held that where plaintiff had made very specific allegations as to defendants' "manipulative conduct, fraudulent course of business, and false statements," and tied those allegations to a "steep drop in the price of Cisco's stock after Cisco Defendants began to disclose the alleged 'truth' about its financial condition," plaintiffs had properly pled loss causation. 411 F. Supp. 2d 1172, 1177-78 (N.D. Cal. 2005).

An Eastern District of Michigan court, however, granted defendants' motion to dismiss because the plaintiffs failed to adequately plead loss causation. In re Compuware Sec. Litigation, 386 F. Supp. 2d 913 (E.D. Mich. 2005). The court finds Judge Taylor's reasoning in this case both instructive and persuasive. The complaint in this case was filed by a group of investors who purchased Compuware common stock. Id. at 914-15. Plaintiffs alleged that defendants "issued a series of false and misleading statements, which were designed to conceal from the investing public serious problems" with Compuware's business. Id. at 915. Plaintiffs further alleged that when these problems became publicly known, and it became apparent that Compuware would have to significantly restructure its business operations, Compuware's stock price dropped 25% in one day. Id. Plaintiffs filed suit under Section 10(b) and 20(a) of the Act, and SEC rule 10b-5. Id.

Judge Taylor noted that the complaint contained three central allegations: (1) that "as a direct and proximate result of Defendants wrongful conduct, [plaintiffs] suffered damages in connection with their respective purchases and sales of the Company's common stock . . . .", (2) that defendants announced the initiation of litigation against a competitor, and (3) that defendants' misrepresentations in regard to its business problems had concealed a "revenue shortfall, requiring a goodwill impairment and restructuring charges in excess of $365 million." Id. at 918. Judge Taylor then explained why such pleadings are inadequate under Dura.

9

> [T]he complaint exhibits the same defective pleading identified by the Supreme Court in Dura. First, [plaintiffs'] complaint engages in a thorough exposition of the allegedly false and misleading statements. Then it alleges that [plaintiffs] purchased the Defendants' stock at an inflated price as a result of Defendants' misrepresentation and suffered a loss (although it had already sold its stock) when the Defendants made an unfavorable earnings announcement. *Wholly absent from its pleading, however, is a nexus between the misrepresentation of which [plaintiffs] complain and the losses they suffered.* Without more, the [plaintiffs'] complaint states that 'as a direct and proximate result' of Defendants' conduct [plaintiffs] suffered losses by purchasing Defendants' stock at an inflated rate. The Court's opinion in Dura does not merely require a plaintiff to include the magic words 'direct and proximate' in connection with its alleged loss. Plaintiffs must do more than use talismanic language to cure an otherwise inadequately pled complaint.

Id. (emphasis added). This court went on to emphasize that plaintiffs in private securities actions must plead the specific causal link between defendants' alleged misrepresentations and plaintiffs' alleged economic losses. "Plaintiffs are charged with pleading the connection, listing what it is, thereby giving defendants notice of the losses it alleges." Id. at 919. Judge Taylor ultimately found that the plaintiffs in this case had failed to properly plead loss causation, and granted defendants' motion to dismiss. Id. at 921.

### 3. *Plaintiffs in this case have failed to properly plead loss causation*

As the court has explained, Plaintiffs have alleged seven material misrepresentations by Defendants. In order to survive this Motion for Judgment on the Pleadings, Plaintiffs must properly allege a causal nexus between these misrepresentations and their economic losses. See id. at 918. Plaintiffs, though, need not meet a heightened pleading standard in making this causal allegation. See Dura, 544 U.S. at 346 ("We concede that the Federal Rules of Civil Procedure require only a 'short and plain statement of the claim showing that the pleader is entitled to relief.' FED. R. CIV. P. 8(a)(2). And we assume, at least for argument's sake, that neither the Rules nor the securities statutes impose any special further requirement in respect to the pleading

10

of proximate causation or economic loss."). A complaint in a securities fraud action, however, must allege actual misrepresentations or other fraudulent conduct on the part of the defendants, and describe how it is that defendants' alleged misrepresentations or fraudulent conduct caused the plaintiffs' economic losses. Id. at 345-46.

Plaintiffs in this case first allege that Sara Lee's acquisition of Earthgrains was conducted without due diligence. "According to a number of former employees . . . the Earthgrains acquisition, despite being the largest acquisition by far that Sara Lee had ever undertaken, was hastily conceived, negotiated, and completed." Compl., ¶ 33. Plaintiffs make numerous allegations that Defendants, in various press releases, expressed optimism regarding the profitability of its Bakery operations after the Earthgrains acquisitions. Id., ¶¶ 117, 124, 142, 145, and 155. However, Plaintiffs do not allege that any of these press releases contain misstatements regarding Sara Lee's alleged lack of due diligence regarding this acquisition. Moreover, Plaintiffs allege that de Kool admitted, in a conference call, that the Earthgrains acquisition was presently a "disappointment," and that the returns on this acquisition "are not in line with expectations." Id., ¶ 161. The court therefore finds that Plaintiffs have failed to allege, as regards the Earthgrains acquisition, any false and or misleading statement that has a direct causal relationship to Plaintiff's economic losses. See Dura, 544 U.S. at 345-46; Compuware, 386 F. Supp. 2d at 918.

Plaintiffs also allege that Sara Lee's corporate Reshaping program was "unsuccessful and plagued with operational difficulties." Compl., ¶¶ 54-59. Plaintiffs allege that Sara Lee was overly optimistic, in various press releases and conference calls with stock analysts, in regards to the benefits it expected to reap from this program. "We began to see the benefits of the

11

Reshaping efforts carried out over the last two years, and I [McMillan] expect the company's improved sales and profit performance to strengthen throughout fiscal 2003." Id., ¶ 114. "Savings from our Reshaping efforts, including more than $50 million in the meat group alone, should total about $135 million next year." Id., ¶ 126. "As a result of our Reshaping program, for the first time in several years we are seeing a growth in operating income. In this first quarter, we project that operating income will grow more than 20% over the year ago period, and for the full fiscal year we anticipate that it will grow more than 15% with increased operating income from all lines of business." Id., ¶ 138. It is not clear to the court that these optimistic business projections rise to the level of actual misrepresentations as required under 15 U.S.C. § 78u-4(b)(1), (2). Setting that issue aside, however, Plaintiffs have also alleged that Sara Lee stated that it missed its earning targets in 2003 because of various market factors, including "challenging market conditions in the foodservice sector and weakness among some retail customers." Id., ¶ 174. Given the "tangle of factors affecting price," it is insufficient for Plaintiffs to allege that Sara Lee's optimistic earnings projections "touch[ed] upon" Plaintiffs' economic losses. See Dura, 544 U.S. at 343. Plaintiffs are required to plead a specific causal link between actual misstatements or fraudulent conduct relating to Defendants' Reshaping program and Plaintiffs' economic losses, and Plaintiffs have failed to do so. See id. at 345-46; Compuware, 386 F. Supp. 2d at 918.

Plaintiffs further allege that Sara Lee engaged in improper "channel stuffing" (overloading retailers with goods prior to the end of a reporting period), improperly deferred expenses for self-insurance, improperly failed to account for liability incurred as a result of a consent decree entered into with the EPA, improperly granted credit to certain customers, and

12

had problems with its accounting infrastructure. Missing from these allegations, however, is a direct causal nexus between any misrepresentations connected to these events and Plaintiffs' economic loss. See Dura, 544 U.S. at 345-46. At best, these allegations reveal questionable business decisions by Sara Lee's management. Plaintiffs have not explained how it is, given the "tangle of factors affecting [stock] price," that these alleged events caused their losses. See id. at 343; see also Summers v. State Street Bank & Trust Co. – F.3d –, slip op. at 8 (7th Cir. June 28, 2006) ("There is always risk, in the sense of variance of returns, to owning common stock, because the fortunes of a company are uncertain and the stockholders, unlike bondholders and other owners of the company's debt, do not have a fixed entitlement; they are the residual risk bearers.").

For all of these reasons, the court determines that Plaintiffs have failed to properly plead loss causation under Dura and its progeny. Plaintiffs have alleged that they purchased Sara Lee stock at inflated prices. But the Supreme Court has indicated clearly that "an inflated purchase price will not itself constitute or proximately cause the relevant economic loss." Dura, 544 U.S. at 342. Plaintiffs are required to plead a specific causal relation, or "nexus," between Sara Lee's alleged misstatements and their losses, and they have failed to do so. See Compuware, 386 F. Supp. 2d at 918 ("Wholly absent from its pleading, however, is a nexus between the misrepresentation of which [Plaintiffs] complain and the losses they suffered.").

### III. CONCLUSION

The court acknowledges that it earlier denied Defendant's Motion to Dismiss, finding that under the ordinary pleading standards of Swierkiewicz v. Sorema N.A., 534 U.S. 506 (1994), and Leatherman v. Tarrant County, 507 U.S. 163 (1993), Plaintiff's claims were sufficient. See

Minute Order of December 21, 2004. However, the Supreme Court's decision in <u>Dura</u> has given the court occasion to order additional briefing from the parties on the issue of loss causation. As Judge Posner informs us, the law is an "activity," and evolves over time as judges decide cases. See Richard A. Posner, REASONING BY ANALOGY, 91 CORNELL L. REV. 761, 770 (2006). Here, the judges of the Supreme Court have clearly indicated that plaintiffs in securities fraud actions must both allege and prove that the defendants' misrepresentations or other fraudulent conduct have proximately caused plaintiffs' economic losses. In this case, the court determines that Plaintiffs have failed to properly make this allegation. Defendants' Motion for Judgment on the Pleadings is therefore granted.

IT IS SO ORDERED

ENTER: *[signature]*

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: July 10, 2006